## IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. CROIX

MOHAMMAD HAMED, by his      )    Case No.1:12-cv-99
authorized agent, WALEED HAMED,    )
                                  )
         Plaintiffs,            )
                                    )
v.                                        )
                                    )
FATHI YUSUF and UNITED CORPORATION,    )
                                    )
         Defendants.          )
_____ )

### DEFENDANTS' RESPONSE IN OPPOSITION TO
### THE PLAINTIFFS' MOTION FOR REMAND

**COMES NOW** Defendants, by and through undersigned counsel, submit this response in

opposition to Plaintiff's Motion for Remand (Doc. # 13).

### INTRODUCTION

At bottom, what Mohammad Hamed, by his authorized agent Waleed Hamed ("the

Plaintiffs"), are attempting to accomplish in the instant case is use a civil action to effectively enjoin

Fathi Yusuf and United Corporation ("Defendants") from complying with the terms of the plea

agreement, addendum to the plea agreement, and from obtaining the benefits of an I.R.C. § 7121

Closing Agreement, all entered into in the on-going federal criminal case of *United States, et al. v*

*United Corporation, et al.,* case no. 1:05-cr-15 (D.V.I.) ("the criminal case").

The Plaintiffs have attempted to construct two parallel realities that are diametrically

opposed. In the instant case the Plaintiffs seek to have United Corporation, a *de jure* corporation

formed under the laws of the Virgin Islands declared a partnership, but in the criminal case Waheed

Hamed and Waleed Hamed (Mohammad Hamed's agent in this case) have denied that Mohammad

Hamed was a partner in United Corporation ("United") and have affirmed that the shareholders of

United include, and only include, members of the Yusuf family. In other words, when Mohammed

Hamed was exposed to criminal liability he was nowhere to be found, yet now that the criminal case is coming to a close he has magically reappeared to feed at the trough.

Furthermore, as detailed below, the Plaintiffs' representations made in this case directly contradict the acts taken in the criminal case. Indeed, the irrefutable evidence shows that the Plaintiffs are attempting to interfere with the resolution of the criminal case, in an attempt to leverage the criminal case to extract a better settlement from the Defendants in the instant case.

The ultimate result of the Plaintiffs' gambit in this case is to prevent the Defendants from comply with the plea agreement, the plea agreement addendum, and effectuate an end-run around the I.R.C. § 7121 Closing Agreement that United and its listed and *de jure* shareholders entered into with the Virgin Islands BIR with the consent of the Federal Government.[1] This case involves both factual and legal issues that are within this Court's jurisdiction and the Motion for Remand should be denied in full.

## FACTUAL BACKGROUND

### A.      The Criminal Action

In or around 2003, as referenced in the Complaint, United, along with certain of its shareholders and non-shareholders, including Mohammed Hamed's son and agent, Waleed Hamed, and son Waheed Hamed, were indicated in a criminal action styled, *United States, et. al. v United Corporation, et al.,* case no. 1:05-cr-15 (D.V.I.),[2] which is pending in this Court. (Complaint ¶¶ 8, 10).

---

[1] If the Plaintiffs are correct, which they are not, then the factual basis for the plea in the criminal case did not exist. That is to say, if United was not a corporation but instead was a "partnership" under the Internal Revenue Code then United should not have filed a Form 1120S, but instead should have filed a Form 1065, if any was required at all. *See* I.R.C. § 6231(a)(1) (defining a partnership as having 11 or more partners). If that is the case it begs the question as to how can United's 2001 Form 1120S be fraudulent to a material matter when it had no filing obligation in the first place?

[2] The criminal case has been appealed to the Third Circuit on three (3) different occasions. *See United States v. Yusuf*, 461 F.3d 374 (3d Cir. 2006) ("*Yusuf I*") (reversing and remanding suppression order); *United States v. Yusuf*, 199 Fed. Appx. 127 (3d Cir. 2006) ("*Yusuf II*") (vacating order releasing restrained assets and remanding for further consideration); *United States v. Yusuf*, 536 F.3d 178 (3d Cir. 2008) ("*Yusuf III*") (vacating order dismissing counts related to international money laundering). Notably absent in each of the three Third

During the criminal case numerous motions were filed by the co-defendants seeking funds to pay protective shareholder income tax deposits and shareholder distributions of United. For example, on November 26, 2008, Judge Finch entered an order (found at Doc. # 1004) (Ex. 1) noting that: "The Court previously granted that portion of the motion requesting release of funds to pay protective shareholder income tax deposits and reserved its ruling on the question of whether proportional shareholder distributions would be released." Ex. 1 at p. 1. Judge Finch goes on to state that:

> any shares of Defendants Fathi Yusuf, Waleed Hamed, and Waheed Hamed fall within the TRO's scope.[3] Allowing shareholder distributions to Defendants Fathi Yusuf, Waleed Hamed, or Waheed Hamed would require a modification of the TRO that such Defendants agreed to forego. No other shareholders' interests are similarly subject to forfeiture and therefore, the shares of the other shareholders do not fall within the bounds of the TRO.

Ex. 1 at p. 2. Ultimately Judge Finch entered an order permitting the release of funds to United's shareholders with the exception of Fathi Yusuf. Ex. 1 at p. 3.

The Government moved to stay Judge Finch's November 26, 2008, Order on December 2, 2008 (found at Doc. # 1006) (Ex. 2) and stated:

> This matter has been pending for over five years and the non-defendant shareholders have not received any shareholder distributions. Withholding distributions for an additional amount of time should not cause the non-defendant shareholders undue hardship. In contrast, releasing funds could cause great prejudice to the Government. Should the Court release funds to the nondefendant shareholders, there is no guarantee that those funds will be returned should the Court reconsider its Order or the Order be vacated on appeal.

Ex. 2 at p. 2.

---

Circuit opinions is any reference that Mohammed Hamed was a partner in United (indeed there is no reference to Mohammed Hamed at all). *See Yusuf I*, 461 F.3d at 378, fn. 1 (failing to mention Mohammed Hamed); *Yusuf II*, 199 Fed. Appx. at 129 ("In December 2003, defendants Fathi Yusuf, Maher Yusuf, and Nejeh Yusuf, and non-defendant shareholders Fawzia Yusuf and Yusuf Yusuf, filed a motion requesting a modification of the Temporary Restraining Orders and a release of funds in order to pay their legal defense.); *Yusuf III*, 536 F.3d at 181 (failing to mention Mohammed Hamed). Additionally, Waleed Hamed has been represented by the same counsel during the pendency of the criminal case and in all three Circuit Court cases.
[3] However, the first footnote to the November 26, 2008, order states: "*It is the Court's understanding that Defendants Waleed Hamed and Waheed Hamed are not United shareholders*." (emphasis added). Ex. 1 p. 2.

On December 6, 2008, the Government moved to reconsider Judge Finch's November 26, 2008, Order (found at Doc. # 1007) (Ex. 3). The Government brought to Judge Finch's attention that "non-defendant petitioners Fawzi Yusuf and Yusuf F. Yusuf submitted motion and pleading to this Court." Ex. 3 at p. 2. The Government goes on to submit that: "the non-defendant shareholders suffer no prejudice when reporting a distributive share of United's income because the tax on that income is being paid with United's assets." Ex. 3 at p. 5. Nowhere in the Government's moving papers is any mention of a "partnership" or an interest in United by Mohammed Hamed. Mohammed Hamed also remained silent on this or any other issue in the criminal case notwithstanding his knowledge of the motions filed in the criminal case.[4]

On December 9, 2008, United and the unindicted shareholders of United (*viz.,* Fawzi Yusuf and Yusuf F. Yusuf) opposed the Government's motion to stay (found at Doc. # 1009) (Ex. 4). Nowhere in said opposition was there any mention of a "partnership" or an interest in United by Mohammed Hamed.

On December 10, 2008, Waleed Hamed through counsel filed a supplement to his motion to dismiss the indictment in the criminal case (found at Doc. # 1011) (Ex. 5) and affirmatively stated that:

> As part of its scheme to separate the defendants from use (*sic*) of legitimate sources of income to fund their defenses, the government compels United Corporation's shareholders to pay income tax on their flow-through income from the company, yet seeks to prohibit the shareholders' access to those same taxed funds.

Ex. 5 at p. 6-7.

On December 22, 2008, United responded in opposition to the Government's motion to reconsider (found at Doc. # 1015) (Ex. 6). United's opposition stated:

---

[4] The Plaintiffs should be equitably estopped from contesting who was/is the "true owner" of United based on their silence. *See New Hampshire v. Maine*, 532 U.S. 742 (2001) (The doctrine of judicial estoppel precludes a party from contradicting its previous position where there has been no change in the law, simply because its interests have changed).

> The Court's decision to first rule on the taxation of United Corporation's distributable income and reserve ruling on the issue of shareholder distributions has provided the Court, the Defendants, and United Corporation's shareholders the opportunity to review the Government's position and conduct regarding the treatment of the subject income.

Ex. 6 at p. 5.  United's opposition then goes on to state:

> [the Government] has accepted tax deposits from these specified shareholders *of over $10 million* on the premise that flow-through income from United Corporation's retail grocery business for the years 2004 through present is their taxable income and property.

Ex. 6 at 5-6 (emphasis in original).

On February 5, 2009, the Government filed its opposition (found at Doc. # 1039) (Ex. 7) to United's show cause motion.  The Government's opposition acknowledged that "the Court denied the motion to intervene filed on behalf of the unindicted shareholders. As such, they lack standing and are not recognized in this forum."  Ex. 7 at fn. 1.  The unmistakable conclusion from this un-refuted statement is that Mohammed Hamed never moved to intervene in the criminal case asserting an interest (in any form) in United or the profits United generated.  Indeed, the Government recognized that "by letter dated January 14, 2009, defendant United Corporation asked the USMS to release $1.2 million to pay tax deposits on distributable shareholder income for the fourth quarter of 2008."  Ex. 7 at 2.  Attached to the Government's opposition was a declaration of Leonard Briskman, the monitor of United in the criminal case (found at Doc. # 1039-1).  Ex. 8.  Mr. Briskman's declaration stated that Randall P. Andreozzi[5] requested the release of $1.2M to pay the tax deposits for the shareholders of United.  Ex. 8 at ¶5.  The Government's February 5th opposition recognized that the: "Defendant's January 14 letter stated the names of the shareholders, their ownership percentages (either 32.5% or 7%), and listed the requested tax deposits of either $390,000 or $84,000, depending on the ownership percentage."  Ex. 7 at p. 2.

---

[5] Mr. Andreozzi is one of the attorneys for Waleed Hamed in the criminal case; the other is Gordon Rhea.

United filed its reply (found at Doc. # 1057) (Ex. 9) to the Government's opposition to the show cause motion on February 17, 2009.   United's reply included as an exhibit the USMS acknowledgement of release of funds (found at Doc. # 1059-1) (Ex. 10).   The acknowledgement was the hand written authorization of Mr. Briskman on a letter from Randall P. Andreozzi to Mr. Briskman seeking the release of funds to pay United's shareholders' tax deposits.

On March 24, 2009, Mr. Gordon Rhea filed a status report with Judge Barnard (found at Doc. # 1080) (Ex. 11), which listed various docket entries addressing, *inter alia,* shareholder distribution motions.   Ex. 11 at p. 1.   Of particular relevance, Waleed Hamed, through counsel, acknowledges that Doc. # 564 in the criminal case addresses shareholder distributions.   Doc. # 564 in the criminal case was filed on September 20, 2005.

On July 9, 2009, a hearing was held before Judge Finch and a transcript of the hearing was produced (found at Doc. # 1213) (Ex. 12).   At the July 9th hearing Mr. Rhea, counsel for Waleed Hamed, deferred to United's counsel regarding the pending shareholder distribution issues.   Ex. 12 at 6:25-7:2.   United's counsel stated to Judge Finch: "And the Government's motion for reconsideration raises the issue, among other things, as to, for the first time I've seen, in any event, has raised the issue as to whether or not the unindicted shareholders to whom these distributions were to be made are, in fact, the shareholders."   Ex. 12 at 7:12-17.   The Government's counsel remarked that:

> One of the issues that has arisen is who, in fact, owns the shares of United. On paper, it is entirely owned by the Yusuf Family, and it is distributed amongst various family members.  However, I believe in civil litigation there was deposition testimony in which it indicated that setting aside the formalities of share certificates, that, in fact, the shares were owned fifty percent by the Yusuf Family and fifty percent by the Hamed Family, and no indication as to how it broke down or even if it broke down between individual family members.

Ex. 12 at 9:15-25.  United's counsel on rebuttal told Judge Finch that:

> The Virgin Islands Government has insisted throughout this litigation that, in fact, the unindicted shareholders make tax deposits on the estimated flow-through

> income from this corporation, has received that without complaint, that money
> without complaint, and I believe they're estopped from suggesting that those
> individuals are not, in fact, the proper shareholders of the corporation.

Ex. 12 at 12:6-13.  At no point during the July 9th hearing did Waleed Hamed's attorneys (Mr. Rhea

or Mr. Andreozzi) ever dispute who the "real" owners of United were nor did they inform Judge

Finch that Mohammed Hamed had any interest in United Corporation.  *See* Ex. 12, *passim.*

Interestingly, on July 13, 2009, the Government filed a supplement to its motion for

reconsideration (regarding shareholder distributions) (found at Doc. # 1151) (Ex. 13) where it raised

"that that the individuals identified as shareholders on United Corporation may not actually own any

part of the company."  Ex. 13 at p. 1.  The Government attached a deposition transcript (found at

Doc. # 1151-1) (Ex. 14) (the very same deposition transcript that the Plaintiffs have attached to

their complaint in the instant case) for the support that Mohammed Hamed may own 50% of

United.  Ex. 13 at p. 2.

United responded (found at Doc. # 1209) (Ex. 15) to the Government's supplement to its

motion for reconsideration (regarding shareholder distributions) on September 8, 2009.  In United's

response it clearly disavows that Mohammed Hamed was a shareholder in United.  Ex. 15 at p. 5.

Indeed, United reasserted that United was owned by the individual members of the Yusuf family.

Ex. 15 at p. 6.

On December 29, 2009, the Government filed its emergency motion for mediation (found at

Doc. # 1233), and as a result of the mediation on February 26, 2010, a plea agreement (found at

Doc. # 1248) (Ex. 16) was entered into.  As part of the plea agreement:

> United agree[d] to cooperate with the Government and the VIBIR in filing complete
> and accurate corporate income tax returns and gross receipts returns for years 2002,
> 2003, 2004, 2005, 2006, 2007, and 2008 and in paying the full the amounts due
> thereupon.  United agrees to comply with all current tax reporting and payment
> obligations between the execution of this agreement and sentencing.  In addition,
> prior to the sentencing hearing in this matter, United's shareholders (FY 32.5%, FY
> 32.5%, SY 7%, ZY 7%, YY 7%, MY 7%, NY 7%), and the individual defendants

shall file the outstanding returns and reporting documents and shall make full payments of the amounts due thereupon.

Ex. 16 at p. 11.  Waleed Hamed's two attorneys executed the plea agreement.  Ex. 16 at p. 14.

Appended to the plea agreement was an exhibit establishing that:

> The parties agree to meet with each other and with representatives of the Virgin Islands Bureau of Internal Revenue (VIBIR) to try to reach agreement for restitution number for unpaid gross receipts taxes, corporate income taxes, and individual income taxes for the Indictment years 1996, 1997, 1998, 1999, 2000, and 2001.

Ex. 16 at p. 17.  On October 1, 2010, Judge Finch accepted United's guilty plea and adjudicated United guilty of Count 60 of the Third Superseding Indictment (found at Doc. # 1289).

Subsequently, on February 7, 2011, the parties in the criminal case filed with this Court an addendum to the plea agreement (found at Doc. # 1304-1) (Ex. 17).  As part of the plea agreement addendum United agreed to pay $10M to the VIBIR for restitution.  Ex. 17 at p. 1.  Waleed Hamed, by his two attorneys executed the plea agreement addendum.  Ex. 17 at p. 5 and 6.

As a result of the plea and plea agreement addendum, United entered into a "Closing Agreement" with the VIBIR pursuant to I.R.C. § 7121.  Ex. 18.  The Closing Agreement clearly references the plea agreement (Doc. # 1248) and the plea agreement addendum (Doc. # 1304-1) in the criminal case.  The Closing Agreement by its very terms was final and conclusive for the tax years at issue and on July 19, 2011, a $10M check was tendered to the VIBIR.[6]  Ex. 18 at p. 7.

On August 12, 2011, Mr. Andreozzi (attorney for Waleed Hamed) filed a motion for the release of funds from United to the shareholders of United (found at Doc. # 1314) (Ex. 19).  Notably absent from the August 12th filing was any mention of Mohammed Hamed.  Judge Barnard granted the release of funds motion on August 19, 2011 (found at Doc. # 1316).

At no point in time did Waleed Hamed ever voice his objections to the distributions to the shareholders of United nor did he ever raise the issue that his father, Mohammed Hamed, was a

---

[6] The Closing Agreement, the plea agreement, the plea agreement addendum are likewise conclusive as to the corporate status and ownership of United.

partner in United or that Mohammed Hamed was entitled to a share of United's profits.  The fact that Waleed Hamed, Mohammad Hamed's authorized agent and sole source of the "factual claims" contained in the complaint and motion for a temporary restraining order filed in this case, stood mute in the criminal case for the better part of a decade speaks volumes.

### B.    Correspondence[7]

On August 31, 2012, counsel for the Plaintiff in this matter sent a letter to the attorneys representing the co-defendants in the criminal case and to the accountants (Mr. Ronald J. Soluri, Sr., CPA and Mr. Howard Epstein, CPA) who were providing accounting services to United and the other co-defendants (Ex. 20).  The August 31st letter also included a draft letter that was addressed to the attorney representing the Government in the criminal case.  Ex. 20 at p. 7-36.  The August 31st letter states in no uncertain terms that: "[h]opefully the US Attorney will understand the situation and (1) take action necessary to enforce the Court injunction and (2) *agree that the filing of partnership returns are acceptable*." Ex. 20 at p. 2 (emphasis added).

On September 10, 2012, the undersigned sent a letter to Mr. Soluri (Ex. 21).   The undersigned merely requested that Mr. Soluri included the undersigned in all further correspondence/communications with the defense team in the criminal case.

On September 11, 2012, Mr. Soluri sent an email to the undersigned asking if the undersigned had been added to the joint defense agreement in the criminal case (Ex. 22).

On September 13, 2012, Mr. Andreozzi, counsel for Waleed Hamed in the criminal case, sent the undersigned a letter via facsimile (Ex. 23).  As Mr. Andreozzi clearly states in his September 13th correspondence: "[y]ou have not signed the joint defense agreement or any amendment to it;

---

[7] The Defendants bring the correspondence to this Court's attention to illustrate that the Plaintiffs are in fact attempting to frustrate the resolution of the criminal case by preventing United from complying with the terms of the plea agreement (i.e., filing of corporate income tax returns), by preventing United's counsel from communicating to the accountants retained to assist in the preparation of United's book, records, and income tax returns, and by unilaterally excommunicating the undersigned from the joint defense team in the criminal case.  The Plaintiffs' words say one thing, but their actions tell a very different story.

and I have certainly not entered into a joint defense agreement that includes you as counsel." Ex. 23 at ¶2. Mr. Andreozzi's letter goes on to state: "[m]oreover, we understand that you represent, in a pending civil dispute, individuals and interests contrary to those of some (if not all) of the defendants covered under the executed joint defense agreement. Therefore, you are not entitled to any joint defense information, communications or materials." Ex. 23 at ¶3.

The following day, September 14, 2012, the undersigned sent a letter to the attorneys that were part of the joint defense team in the criminal case (Ex. 24). The September 14th correspondence asked "that everyone, individually, to please state in writing whether they agree with Mr. Andreozzi's position that I am not covered by the joint defense agreement because I have 'not signed the joint defense agreement or any amendment to it.'" Ex. 24 at ¶2.

On September 17, 2012, the undersigned received via USPS a letter from Ms. Pamela Colon (counsel for Waheed Hamed) (Ex. 25). Although the September 17th letter indicates that it was sent via email and USPS the undersigned has no record of receiving the letter via email. In any event, the letter appears to be a near identical copy of Mr. Andreozzi's September 13th letter. *Compare* Exhibit 25 *with* Exhibit 23.

On September 19, 2012, counsel for Waleed Hamed in the criminal case, Mr. Rhea, sent the attorneys representing the respective co-defendants an email terminating the joint defense agreement (Ex. 26).

On September 26, 2012, counsel for the Plaintiffs in the instant case sent an email (which the undersigned was not copied on) to presumably the other attorneys on the then dissolved joint defense team stating in no uncertain terms that: "Folks-I just want to remind everyone that Attorney DiRuzzo is not part of the joint defense team and is in fact hostile to some of the defendants whose counsel and accountants are part of that team. *Please do not share any information*

*covered by the Kovel agreement with him absent the express authorization of Wally Hamed.*"   Ex. 27 (emphasis added).

On October 12, 2012, the undersigned sent opposing counsel correspondence seeking clarification as to what, if any, potential tax exposure he envisions (Ex. 28).  On October 22, 2012, counsel for the Plaintiffs responded and detailed three different tax issues (Ex. 29).  In the October 22nd correspondence counsel for the Plaintiffs' posits that:

> As there is clearly a partnership, the filing of tax returns showing the supermarket income as being income of Untied would be filing false tax returns.  On the other hand, there is a clear opportunity to file proper returns now, which should not be missed.  Indeed, even if your client insists that United owns the supermarkets, contrary to the evidence mentioned above, *the far better course would be to await a determination of this issue before filing any returns.*

Ex. 21 at p. 2 (emphasis added).

### C.      Relevant Procedural Background

On or about September 17, 2012, the Plaintiffs filed their initial complaint with the Virgin Islands Superior Court.  Doc. # 1-3.  In the initial Complaint the Plaintiffs put front and center the on-going criminal case.  *See* Doc. # 1-3 at ¶¶8, 10, and 19(g).  On October 4, 2012, the Defendants removed to this Court.  Doc. # 1.  On October 9, 2012, the Defendants filed motions to dismiss, more definite statement, and to strike.  Doc. # 9.  On October 11, 2012, the Plaintiffs moved to remand to Superior Court.  Doc. # 13.  On October 19, 2012, the Plaintiffs' filed their First Amended Complaint (Doc. # 15) and comparison (i.e., red-lined) document (Doc. # 17).  However, as is readily apparent from the Plaintiffs' comparison document, the Plaintiffs merely deleted any reference to the on-going criminal case.  *See* Doc. # 17 at p. 7, 8, and 15

### ARGUMENT

As a threshold matter, this Court must first address is:  which complaint governs this Court's analysis?  As detailed *infra,* it is the Plaintiffs' initial complaint.

A court must consider the complaint at the time of removal to determine if removal was appropriate in the first instance. *See Pullman Co. v. Jenkins*, 305 U.S. 534, 537 (1939); *see also In Angus v. Shiley, Inc.,* 989 F.2d 142, 145 (3d Cir. 1993) (concluding that removal jurisdiction established by the plaintiff's original complaint would not be destroyed by an amended complaint). Accordingly, this Court must examine the Plaintiffs' initial complaint (Doc. # 1-4) as that was the pleading at issue when the Defendants removed.

## I.      This Court Has Exclusive Jurisdiction

48 U.S.C. § 1612(a) provides this Court with "exclusive jurisdiction over the income tax laws applicable in the Virgin Islands." Contrary the Plaintiffs' assertions, this case does implicate the income tax laws applicable in the Virgin Islands and, as such, this Court and only this Court can address the Plaintiffs' complaint.

What the Plaintiffs are attempting to accomplish is to prevent United from filing its corporate income tax return with the Virgin Islands *as is required* under the terms of the plea agreement. Ex. 16. The plea agreement could not be any clearer – United must file corporate (and not partnership) income tax returns for 2002 – 2008. Ex. 16 at p. 11. To that end, the individual shareholders of United (as identified in the plea agreement as the individual members of the Yusuf family (Ex. 16 at p. 11)) must also file their income tax returns and pay the amount thereon. *Id.* However, if United cannot prepare its Form 1120S, it cannot issue the Schedule K-1s to the respective shareholders. The end result of this case would be that United will be enjoined from complying with the terms of the plea agreement.

Further, the Closing Agreement with the VIBIR by its very term applies to "United Corporation, United's shareholders and all of the individual defendants and related individuals and entities identified in the various pleadings and motions in Case No. 1:05-cr-00015-RLF-GWB for each of the years 1996 through 2001 as addressed with particularity in the Plea Agreement." Exhibit

18 at p. 2.  The Closing Agreement on its face referenced the criminal case, the plea agreement, and the plea agreement addendum, and was made pursuant to I.R.C. § 7121.

By operation of law "United's shareholders and all of the individual defendants and related individuals and entities identified in the various pleadings and motions in Case No. 1:05-cr-00015-RLF-GWB for each of the years 1996 through 2001 as addressed with particularity in the Plea Agreement" are prohibited from altering any of the tax filings, or seeking a refund of taxes paid for those years.  However, as demonstrated in opposing counsel's October 22nd letter (Ex. 18), Mohammed Hamed and Waleed Hamed are advancing just such a precluded a theory (i.e., that Mohammed Hamed has always been a partner and that United needs to file Form 1605 partnership returns instead of corporate returns (Ex. 18 at p. 2)).  Actions such as these are clearly barred by the terms of the I.R.C. § 7121 Closing Agreement.  In other words, the die has been cast; the Plaintiffs cannot now, years after the fact, come into to any Court in an attempt to eviscerate the terms, benefits, and burdens United, United's shareholders, all of the individual defendants, related individuals, and entities received by entering into the plea agreement, the plea agreement addendum, and the Closing Agreement.[8]

I.R.C. § 7121(b) provides finality for taxpayers by being expressly "final and conclusive" "*in any suit, action, or proceeding*, such agreement, or any determination, assessment, collection, payment, abatement, refund, or credit made in accordance therewith, *shall not be annulled, modified, set aside, or*

---

[8] Moreover, as detailed above, the timing of the instant case is conspicuous.  At no point did anyone in the criminal case come forward and state that Mohammed Hamed was a partner in United and that Mohammed Hamed (and not the disclosed *de jure* shareholders of United) was entitled to a shareholder or partner distribution or that Mohammed Hamed was liable for any unpaid taxes.  Indeed, in July of 2009, *see* Ex. 13 and 14, the Government raised the issue of who the "real" owners of United were, but at the July 9, 2009, hearing when United's counsel refuted the Government's allegation both Waleed Hamed's and Waheed Hamed's respective attorneys remained silent, thus focusing the substantial tax liability at the feet of the Yusuf family members.  *See* Ex. 12, *passim; see also* Ex. 10 (letter from Waleed Hamed's attorney to the U.S. Marshal Service seeking a release of funds for United's shareholders' tax deposits); Ex. 19 (motion by Waleed Hamed's attorney seeking release of funds from United to pay the shareholders of United after the I.R.C. § 7121 Closing Agreement was executed).

*disregarded*." I.R.C. § 7172(b)(2) (emphasis added). But that is exactly what the Plaintiffs are seeking -

to annul, modify, set aside, or disregard that United is a *de jure* corporation with stated shareholders –

the Yusuf family members, and has a corporate income tax filing obligation.

> The Third Circuit has stated in no uncertain terms that
>
> we hold that the District Court of the Virgin Islands has 'exclusive jurisdiction' over proceedings 'with respect to the income tax laws applicable to the Virgin Islands' only as against local courts in the Virgin Islands. 48 U.S.C. § 1612(a). The contested language is a division of jurisdiction in favor of the federal courts, in contrast to local courts, with respect to Virgin Islands tax cases.

*Birdman v. Office of the Governor*, 677 F.3d 167, 177 (3d Cir. 2012). Because the Plaintiffs' initial

complaint (as further detailed in the aforementioned correspondence) seeks to disregard the Closing

Agreement entered into pursuant to I.R.C. § 7121, and prohibit compliance with the plea agreement

and the terms of probation detailed in the plea agreement, this Court has exclusive jurisdiction over

the Plaintiffs' case while the Superior Court has no jurisdiction.

Additionally, the Plaintiffs' initial complaint seeks to enforce an Order of this Court entered

in the criminal case in the Superior Court. *See* Doc. # 1-3 at ¶ 8 and 10 ("The parties are currently

prohibited from removing funds from these accounts other than to operate the three Plaza

supermarkets because of an Order entered by the District Court of the Virgin Islands in the criminal

matter entitled, *USA v. United Corporation, et al.*, District Court Criminal No. 2005-15."). Obviously,

this Court has the capacity and is best suited to enforce its own Orders, which further support the

Defendants' position that the initial complaint provided the Defendants with the ability to properly

remove the case to this Court.

Accordingly, because the Plaintiffs' initial complaint is predicated upon the Orders of this

Court in the criminal case, and because the Plaintiffs seek to disturb the plea agreement, the plea

agreement addendum, and the Closing Agreement entered into pursuant to I.R.C. § 7121, this Court

"has exclusive jurisdiction" while the Superior Court lacks jurisdiction to entertain this case. The Plaintiffs' motion for remand should be denied.

## II.  This Court has Federal-Question Jurisdiction

In *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*, 545 U.S. 308 (2005) the Supreme Court upheld federal jurisdiction in a state-law action turning on the interpretation of a federal tax law. *Grable* recognized that in addition to the frequently used federal jurisdiction statute, 28 U.S.C. § 1441,

> [t]here is, however, another longstanding, if less frequently encountered, variety of federal 'arising under' jurisdiction, this Court having recognized for nearly 100 years that in certain cases federal-question jurisdiction will lie over state-law claims that implicate significant federal issues. The doctrine captures the commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues.

*Grable*, 545 U.S. at 312 (internal citation omitted).

Contrary to the Plaintiffs' contention, this case, although cast as a local level partnership action, implicates significant federal tax issues. These issues, as described above, are the tax issues and obligations set forth in the plea agreement, the plea agreement addendum, the Closing Agreement, and the ultimate resolution of the on-going criminal case. The *Grable* Court cited as a "classic example" *Smith v. Kansas City Title & Trust Co.*, 255 U.S. 180 (1921) "a suit by a shareholder claiming that the defendant corporation could not lawfully buy certain bonds of the National Government because their issuance was unconstitutional. Although Missouri law provided the cause of action, the Court recognized federal-question jurisdiction because the principal issue in the case was the federal constitutionality of the bond issue." *Grable*, 545 U.S. at 312. The similarities of the case at bar to *Smith* are striking. Here we have a suit by a purported partner claiming that the defendant corporation cannot lawfully file its income tax returns because doing so would be "the

filing of a false tax returns"[9] (Ex. 21 at p. 2).  The principal issues in this case are: (i) whether United as a *de jure* corporation that made a Subchapter S election under the Internal Revenue Code is legally obligated to file its Form 1120S for the years at issue, (ii) whether the I.R.C. § 7121 Closing Agreement prevents the relief the Plaintiffs seek, and (iii) whether United is bound to the terms of the plea agreement to file its "corporate income tax returns."  Ex. 16 at p. 11.

What the Plaintiffs fail to take into account is that once an entity, in this case United, files an "election by a small business corporation" (Form 2553) *available at* http://www.irs.gov/pub/irs-pdf/f2553.pdf, under I.R.C. § 1362, that election remains in effect until another valid election is made.  Treas. Reg. § 301.7701-3(c)(1)(v)(C).  In other words, the Plaintiffs' attempt to have United file partnership returns (Form 1065) is impermissible under the plea agreement, the plea agreement addendum, the Closing Agreement*, and the applicable Treasury Regulations.*

In the case at bar there is "not only a contested federal issue, but a substantial one, indicating a serious federal interest in claiming the advantages thought to be inherent in a federal forum." *Grable,* 545 U.S. at 313 (internal citation omitted).  Further, given that the operative facts at issue stem from the criminal case, there will not be "any disruptive portent," *id.* at 314, in this Court exercising federal jurisdiction as Territorial-law claim raises federal issues, that are substantial, disputed, that this Court must entertain under 48 U.S.C. § 1612(a), but in any event, at a minimum may entertain under 28 U.S.C. § 1331.  If the meaning of the federal tax provision (I.R.C. § 6335) was an important issue of federal law that sensibly belonged in a federal court in *Grable,* then it follows that the meaning of the plea agreement, the plea addendum, the Closing Agreement under I.R.C. § 7121, and the "check the box" entity election under Treas. Reg. § 301.7701-3 sensibly belong before this Court.  Accordingly, there is federal "arising under" jurisdiction as the Territorial-

---

[9] The filing of a false return is a crime under I.R.C. § 7206.

law claim more than implicates significant federal issues, this Court has jurisdiction and should deny

the Plaintiffs' motion to remand.

### III.      Federal Officer Authority

Removal is proper when:

> [t]he United States or any agency thereof or any officer (or any person acting under
> that officer) of the United States or of any agency thereof, [is] sued in an official or
> individual capacity for any act under color of such office or on account of any right,
> title or authority claimed under any Act of Congress for the apprehension or
> punishment of criminals or the collection of the revenue.

28 U.S.C § 1442(a)(1).

"The words 'acting under' are broad, and [the Supreme] Court has made clear that the

statute must be 'liberally construed.'"  *Watson v. Philip Morris Cos.*, 127 S. Ct. 2301, 2304-2305 (2007).

The *Watson* Court defined "acting under" as "acting in a certain capacity, considered in relation to

one holding a superior position or office" which "typically involves 'subjection, guidance, or

control.'"  *Id.* at 2307.

With these definitions in mind it is clear that United and its shareholders have been, and

continue to be, subjected to the guidance or control of both the Federal Government and the Virgin

Islands Government as detailed in the plea agreement, the plea agreement addendum, and the terms

of probation that United must comply with, which includes *inter alia* "a periodic review of financial

statements and tax returns of United."  Ex. 16 at p. 5, 7-9.  Indeed, "United acknowledge[d] that a

special condition of probation will require *that all corporate returns be filed,* and all amounts due and

owing under this agreement and all taxes due and owing for tax years 2002 through 2008 must be

paid prior to the termination of the period of probation."  Ex. 16 at p. 11 (emphasis supplied).

In contrast to what the Plaintiffs aver, this case requires something more than "complying

with the tax laws" or "filling out complex federal tax forms" as United is under the direct

supervision and control (as detailed in the plea agreement including United's term of probation) of

the Federal Government.  If the Plaintiffs have it their way United will not be able to file its corporate income tax returns and, as such, will be in violation of the express terms of the plea agreement.  United should not have to make the Hobson's choice between failing to comply with the terms of the plea agreement (which of course would result in a revocation of probation hearing under Fed.R.Crim.P. 32.1) and complying (assuming *arguendo,* that the Plaintiffs were able to convince a court to enjoin United from filing its corporate income tax returns) with a local level court order prohibiting the filing of corporate income tax returns.

Because the Defendants are not federal officers, they must satisfy a three-pronged test to entitle them to removal under 28 U.S.C. § 1442(a)(1).  First, the Defendants must establish that they are a "person" within the meaning of the statute who "act[ed] under [a federal] officer[.]" 28 U.S.C. § 1442(a)(1).  Second, the Defendants must demonstrate that they performed the actions for which they are being sued "under color of [federal] office[.]"  *Id.*  Third, the Defendants must show that they raised a colorable federal defense.  *See Jefferson County v. Acker*, 527 U.S. 423, 431 (1999).  Each prong will be discussed in turn.

*First,* the Defendants are each a "person" under § 1442 which includes both individuals and corporations.  *See Bennett v. MIS Corp.,* 607 F.3d 1076, 1085 (6th Cir. 2010) (collecting cases).  For the reasons stated above the Defendants are "acting under" the terms of the plea agreement and terms of probation.  To that end the Sixth Circuit's opinion in *Bennett* is instructive.  In *Bennett* the Sixth Circuit found that a government contractor that was closely monitored by federal officers went beyond "simple compliance with the law" and the relationship met the "acting under" requirement since it involved "detailed regulation, monitoring, and supervision."  *Id.* at 1088.  Here, the Defendants are, and United will continue to be, subject to detailed regulation, monitoring, and supervision, by the U.S. Probation Office (an extension the Federal Government), during the term

of probation.[10]   Accordingly, if the governmental contractor in *Bennett* was "acting under" the authority of a federal officer, United's compliance with its affirmative obligation to file corporate income tax returns should also qualify as "acting under" for purposes of 28 U.S.C. § 1442.

*Second,* the Plaintiffs are suing to enjoin the actions of the Defendants under color of federal office.

> "To satisfy th[is] [] requirement, [a removing party] must show a nexus, a 'causal connection' between the charged conduct and [the] asserted official authority." [*Acker,* 527 U.S. at 431 (1999)] (quoting *Willingham [v. Morgan]*, 395 U.S. [402] 409 [1969]). In other words, the removing party must show that it is being sued because of the acts it performed at the direction of the federal officer. *See Watson,* 551 U.S. at 148; [additional internal citations omitted]. The Supreme Court has indicated that "[t]he hurdle erected by this requirement is quite low." *Isaacson [v. Dow Chem. Co.],* 517 F.3d [129], 137 [2d Cir. 2008] (citing *Maryland v. Soper,* 270 U.S. 9, 33, 46 S. Ct. 185, 70 L. Ed. 449 (1926) ("[i]t is enough that [the federal officer's] acts or [] presence at the place in performance of his official duty constitute[s] the basis" for the lawsuit.).

*Bennett*, 607 F.3d at 1088. Here, the Defendants are being sued because of the acts that it is about to perform at the direction of the federal officer – the terms of the plea agreement and probation, and the acts that the Defendants already have performed – the execution of the Closing Agreement and attendant payment of $10M to settle the civil tax liability. The nexus is clear, the Defendants compliance with both the plea agreement and the Closing Agreement have, at least in part, given rise to the impetus for the Plaintiffs initial complaint. Defendants submit that they have cleared this low hurdle.

*Third,* the Defendants must show that they raised a colorable federal defense.  *Acker*, 527 U.S. at 431.  However, as the Second Circuit acknowledged: "[c]ourts have imposed few limitations on what qualifies as a colorable federal defense. At its core, the defense prong requires that the

---

[10] By analogy, if "in the criminal context, an individual who is on parole or released on his or her own recognizance is deemed in custody because of the significant restrictions imposed on his or her freedom," *Kumarasamy v. AG of the United States*, 453 F.3d 169, 172 (3d Cir. 2006), these restrictions, including affirmative obligation to perform an act, must rise to the level of supervision need to be construed as "acting under" in the context of 28 U.S.C. § 1442.

defendant raise a claim that is 'defensive' and 'based in federal law.'" *Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 138 (2d Cir. 2008).   Furthermore, "[c]ompliance with federal law, therefore, provides a colorable federal defense under some circumstances, but it is not coterminous with an immunity defense." *Id.*   Here, the colorable federal defense is the compliance with the plea agreement, the plea agreement addendum, the I.R.C. § 7121 Closing Agreement, and the terms of the conditions of United's probation.   To be "colorable," the defense need not be "clearly sustainable," as the purpose of the statute is to secure that the validity of the defense will be tried in federal court.   *Willingham,* 395 U.S. at 407.   In this context the federal defense is complying with this Court's orders, the direction of the VIBIR, and direction of the U.S. Probation office.   These claims are defensive, based in federal law, and are in compliance of federal law.   Accordingly, the third prong is satisfied.

To be sure, the Defendants admit, as they must, that this appears to be a matter of first impression within this Circuit, and from what the undersigned's research has uncovered in any Circuit.   Accordingly, absent any case law to the contrary, the Supreme Court's guidance that the removal statutes must be "liberally construed," *see Watson, supra,* militates in favor of finding jurisdiction under the Federal Officer Authority of  28 U.S.C § 1442(a)(1).   Thus, the Plaintiffs' motion for remand should be denied.

## IV.    Supplemental Jurisdiction

As this Court has jurisdiction over this case as detailed above, this Court would be well within its discretion to exercise supplemental jurisdiction pursuant to 28 U.S.C § 1367(a).   The Plaintiffs' partnership causes of action sounding in the Virgin Islands Uniform Partnership Act "form part of the same case or controversy under Article III[11] of the United States Constitution." 28 U.S.C. § 1367(a).

---

[11] "By virtue of [the 1984 amendments to the Revised Organic Act], the District Court [of the Virgin Islands] now possesses the jurisdiction of a[n Article III] 'District Court of the United States,'  though it remains an Article IV Court." *Parrott v. Gov't of V.I.,* 230 F.3d 615, 619, 43 V.I. 277 (3d Cir. 2000).   "In effect, the

## CONCLUSION

**WHEREFORE,** for the reasons stated herein, the Defendants request that this Court enter an Order denying Plaintiffs' Motion to Remand.

Respectfully submitted,

/s/ Joseph A. DiRuzzo, III
Joseph A. DiRuzzo, III
USVI Bar # 1114
Fuerst Ittleman David & Joseph, PL
1001 Brickell Bay Drive, 32nd Floor
Miami, Florida 33131
305.350.5690 (O)
305.371.8989 (F)
jdiruzzo@fuerstlaw.com

Dated October 25, 2012

## CERTIFICATE OF SERVICE

I hereby certify that, on October 25, 2012, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on the following counsel of record via transmission of a Notice of Electronic Filing generated by CM/ECF: Joel H. Holt, Esq., 2132 Company St. Suite 2, Christiansted VI 00820; Carl J. Hartmann III, Esq., 5000 Estate Coakley Bay, L-6, Christiansted, VI 00820.

/s/ Joseph A. DiRuzzo, III
Joseph A. DiRuzzo, III

---

relationship between the District Court [of the Virgin Islands] and the Superior (formerly Territorial) Court, both of which are Article IV courts, now somewhat resembles the relationship between Article III federal district courts and state courts." *Birdman v. Office of the Governor*, 677 F.3d 167, 175 (3d Cir. 2012) (internal citations omitted).